UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>TRITON MARINE CONSTRUCTION CORP., R. JOHN ARMSTRONG, PATRICIA B. ARMSTRONG, LEOLA E. DALY, M. JEAN SEARLE, WILLIAM F. SEARLE, WENDELL E. WEBBER, JANICE K. WEBBER, SANDRA F. PRESTRIDGE, A. BURTON PRESTRIDGE, EDWARD A. WARDELL, CAROLYN S. WARDELL, JERRY W. MCDONALD, MARY J. MCDONALD, AND THE ESTATE OF EUGENE F. DALY,<br><br>        Defendants. | CIVIL ACTION NO. 3:02CV1500SRU |

### AFFIDAVIT OF SHERRIE L. MONTEIRO IN SUPPORT OF TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

I, Sherrie L. Monteiro, having been duly sworn, hereby depose and state as follows:

1.      I am employed by St. Paul Travelers and I have full authority to adjust, manage, prosecute and defend claims on behalf of Travelers Property & Casualty Insurance Company ("Travelers") in this lawsuit. I make the statements that follow on personal knowledge or on the basis of business records of Travelers, of which I am the keeper.

2.      At all times relevant to this action, Travelers has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

1

3. On September 12, 1994, Triton Marine Construction Corporation ("Triton"), R. John Armstrong, Patricia B. Armstrong, Leola E. Daly, N. Jean Searle, William F. Searle, Wendell E. Webber, Janice K. Webber, Sandra F. Prestridge, A. Burton Prestridge, Edward A. Wardell, Carolyn S. Wardell, Jerry W. McDonald, Mary J. McDonald and the Estate of Eugene F. Daly (hereinafter collectively referred to as "Defendants" or "Indemnitors") executed an Underwriting and Continuing Indemnity Agreement ("Indemnity Agreement") in favor of Reliance Insurance Company. A true and accurate copy of the Indemnity Agreement is attached hereto as <u>Exhibit A</u>.

4. In or about May 2000, Travelers purchased certain assets and liabilities relating to the surety and fidelity lines of Reliance Group Holdings, Inc. including the potential rights and obligations arising from the surety bonds issued by Reliance Insurance Company, such as the Bond and Indemnity Agreement which are the subject of this lawsuit. Travelers is Administrator for Reliance Insurance Company ("Reliance") and, unless otherwise specified, Reliance will be referred to herein as "Travelers."

5. On or about May 9, 1997, Triton entered into a written Contract, Number DACW47-97-C0015 ("Contract") with United States of America, Army Corps of Engineers, (hereinafter referred to as "Government" or "Obligee") for the construction of the Abiquiu Dam Emergency Gate Bypass System (hereinafter, "the Project").

6. As a result of and in reliance upon the Indemnitors executing the Indemnity Agreement, Travelers issued a Performance and Payment Bond, Number B2617793 ("the Bond"), naming the Army Corps of Engineers as Obligee, and Triton, as Principal, hereinafter with respect to the Project. A true and accurate copy of the Bond is attached hereto as <u>Exhibit B</u>.

7. On or about February 18, 2000, the Government notified Travelers that Triton was in default of the contract and issued a Termination for Default of the Contract and demanded that Travelers, as surety, complete the Contract.

8. Travelers subsequently negotiated a Takeover Agreement with the Government dated April 20, 2000 and effectuated a completion of the Contract.

9. As a direct and proximate result of the issuance of the Bond to Triton, Travelers sustained damages and losses, including consultants' and attorneys' fees and other expenses, and anticipates sustaining additional claims, losses and expenses.

10. Pursuant to the terms and conditions of the Indemnity Agreement (¶17), each Indemnitor:

> specifically agrees to protect, indemnify and hold harmless Reliance and its attorney-in-fact against any and all Loss that may in any way arise out of the exercise of the assignments contained in this agreement and the powers herein granted, specifically waiving any claim which any Indemnitor has or might hereinafter have against Reliance or its attorneys-in-fact on account of anything done in enforcing the terms of this Agreement or the Bonds.

11. Pursuant to the terms and conditions of the Indemnity Agreement (¶11), the Indemnitors:

> agree to indemnify, and keep indemnified, and hold and save harmless RELIANCE against all LOSS. The duty of INDEMNITORS to indemnify RELIANCE is a continuing duty, separate from the duty to exonerate, and survives any payments made in exoneration of RELIANCE. Amounts due RELIANCE shall be payable upon demand.

12. The Indemnity Agreement (Page 4) defines Loss as:

> (a) All damages, costs, attorney fees and liabilities (including all expenses accrued in connection therewith) which RELIANCE may sustain or incur by reason of executing or procuring the execution of the BOND(s), or any other BOND(s) which may be already or hereafter executed on behalf of PRINCIPAL, or renewal or continuation thereof; or which may be sustained or incurred by

3

reason of making any investigation on account thereof, prosecuting or defending any action in connection therewith, obtaining a release, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the provisions of this Agreement, including, but not limited to:

> (1) money judgments, amounts paid in settlement or compromise, the full amount of attorney and other professional fees incurred or paid by RELIANCE, court costs and fees, and interest at the maximum legal rate allowable on all sums due it from the date of RELIANCE's demand for said sums, whether or not interest has been awarded by a court; and
>
> (2) any LOSS which RELIANCE may sustain or incur in connection with the CONTRACT(s) or BOND(s), whether that LOSS results from the activity of the PRINCIPAL individually or as part of a joint venture, partnership or other entity which has been or may be formed; and
>
> (3) any LOSS which RELIANCE may sustain or incur as a result of any actions taken by RELIANCE upon information provided by any INDEMNITOR.

(b) Legal and consulting fees and related expenses incurred in connection with any application or submission by PRINCIPAL for a proposal, bid or other BOND, whether or not RELIANCE decides to issue said BOND.

13. Despite repeated demand from Travelers to the Indemnitors that the Indemnitors reimburse and hold Travelers harmless from any claims, losses and expenses incurred and anticipated in connection with the Bond, the Indemnitors have refused to comply.

14. As a result of the foregoing, the Indemnitors are in default of their obligations under the terms and conditions of the Indemnity Agreement.

15. As of September 28, 2004, Travelers has sustained losses in the form of attorneys' fees and expenses in the amount of $148,058.75 by reason of having issued the Bond and in enforcing the terms of the Indemnity Agreement, all of which is recoverable under the specific terms of the Indemnity Agreement.[1]

---

[1] This amount does not include unbilled time and expense and Travelers reserves the right to seek reimbursement for those fees and expenses that may be incurred in further prosecuting and defending this action, in accordance with the express terms of the Indemnity Agreement.

16. In addition, Travelers has sustained losses in the form of consultants' fees and other miscellaneous in-house expenses in excess of $115,000.00 by reason of having issued the Bond, all of which is recoverable under the specific terms of the Indemnity Agreement.

17. To date, the Indemnitors have failed and/or or refused to reimburse Travelers for its incurred loss, costs and expenses in violation of the express terms of the Indemnity Agreement.

18. At all times relevant hereto, Travelers has acted in good faith relative to its obligations as surety as a result of claims made on the Bond. Travelers' determinations to make disbursements were made in good faith and under the belief that was necessary or expedient to make such payments or disbursements.

19. Travelers has complied with all conditions precedent to maintaining this action.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 28th DAY OF SEPTEMBER, 2004.

_____
Sherrie L. Monteiro