FILED

2005 JAN -5 A 11: 31

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY<br>Plaintiff<br><br>V.<br><br>TRITON MARINE CONSTRUCTION, CORP., ET. AL.<br>Defendant | : CIVIL NO. 3:02-cv-1500 (SRU)<br>:<br>:<br>:<br>:<br>: DEFENDANTS/COUNTERCLAIM<br>: PLAINTIFFS', TRITON MARINE<br>: CONSTRUCTION CORP., ET. AL.,<br>: LOCAL RULE 56(a)(2)<br>: STATEMENT OF FACTS |

I. **As to Plaintiff's 56(a)(1) Statement.**

1. The fact is admitted.

2. The fact is admitted.

3. The fact is admitted.

4. The fact is admitted.

5. The fact is admitted.

6. The Defendants do not admit that they assigned anything to Travelers. Any rights and obligations set forth in the Indemnity Agreement related to the relationship between Reliance and the Defendants.

7. The Defendants do not admit that they appointed Travelers as attorney-in-fact. Any rights and obligations set forth in the Indemnity Agreement related to the relationship between Reliance and the Defendants.

8. The Defendants do not admit that they gave Travelers any rights under the Indemnity Agreement. Any rights and obligations set forth in the Indemnity Agreement related to the relationship between Reliance and the Defendants.

9. The fact is admitted.

10. The fact is admitted except that it was Reliance, not Travelers, that issued the Performance Bond.

11. The fact is admitted except that it was Reliance that was notified by the Government.

12. The facts are admitted.

13. The fact is admitted.

14. The fact is admitted. However, it was Reliance, not Travelers, that Triton made aware of its intention. Moreover, the fact is denied to the extent that the facts, as stated, imply that it was anticipated that it was Triton in its own right that was to pursue any claim for the rework costs.

15. The fact is admitted except that it was Reliance that entered into the Takeover Agreement with the Corps.

16. The first two sentences are admitted except that it was Reliance, not Travelers, that included any language in the Takeover Agreement. The last sentence which reads in part, "This paragraph was intended to reserve Triton's rights with regard to the propriety of the termination..." is

admitted. However, it is denied that the language "was not intended to confer any rights upon Triton."

17. The facts are admitted except to the extent that the use of the term "standard language" implies that the language did not have some specific purpose to this matter, which implication is denied.

18. The fact is denied.

19. The fact is admitted.

20. The fact is denied because it does not accurately set forth the reasons why Triton agreed to serve as a completion contractor.

21. The fact is denied because it does not accurately set forth the reasons why Triton agreed to serve as a completion contractor.

22. The fact is admitted, but denied to the extent it, as stated, implies that Triton would on its own seek recovery from the Corps.

23. The facts are denied to the extent that the rework policies were issued and did cover the rework costs Triton incurred on the Project.

24. The fact as set forth is admitted, but only to the extent that it states something that Travelers wrote in a letter. The assertion made by Travelers that it "assumed no responsibility or obligation" to Triton is denied.

25. The fact is admitted, but denied to the extent that there is any implication that TIG compensated Triton for the rework costs.

26. The facts are admitted except to the extent they state that Triton was acting solely as Travelers' principal in the completion of the Project.

27. The fact is admitted only to the extent that Triton assembled its costs and forwarded them to Travelers. The fact is denied, however, because these costs were part of an overall claim that Triton forwarded to Travelers for review and submission to the Corps. Triton's submission to Travelers included items related to something other than just costs.

28. The facts are admitted only to the extent that Bossard reviewed the costs. Beyond that, the facts are denied because they do not fully set forth the undertaking by Bossard.

29. The fact is admitted.

30. The fact is denied because it does not fully and accurately set forth what Bossard did in submitting the claim.

31. The fact is admitted to the extent that it relates what was set forth in the August 30, 2001 submission.

32. The fact is denied.

33. The facts are denied because they indicate that Triton received payment from the rework insurers in settlement of the rework claim.

34. The first and second sentences are admitted. The balance of the paragraph is denied.

35. The facts are denied.

36. The fact is admitted except to the extent that it refers to the fact that the contracting officer "denied Triton's rework claim", which is denied.

37. The contracting officer's decision did state what is set forth in the paragraph, and thus is admitted to that extent only.

38. The fact is admitted.

39. The facts are admitted.

40. The facts are admitted but only to the extent that they set forth what Montiero claims to have understood.

41. The facts are denied.

42. The fact is admitted except to the extent that the Travelers' experts also understood that Triton's experts had asserted a theory as to the cause of the gate leakage, which the Travelers' experts had not concluded was unequivocally wrong.

43. The fact is admitted.

44. The fact is admitted except to the extent that it implies that the Defendants were not willing to honor the reimbursement obligation, and to the extent that the Defendants do, in fact, have an obligation to make reimbursement to Travelers.

45. The fact is admitted but only to the extent that the paragraph sets forth that which is stated in Exhibit 20.

46. The fact is admitted.

47. The fact is denied.

48. The fact is admitted but only to the extent that it is what Montiero testified to.

49. The fact is admitted but only to the extent that it is what Montiero testified to.

50. The facts are denied.

51. The fact is admitted.

52. The facts are denied.

53. The facts are denied.

54. The facts are denied.

55. The facts are denied.

56. The fact is admitted, but denied to the extent that Montiero was the only individual involved in making the decision.

57. The fact is admitted, but only to the extent that it accurately recites Montiero's deposition testimony.

58. The fact is denied.

59. The fact is denied.

60. The fact is admitted, but only because the paragraph alleges what Montiero "understood" and what she "came to the conclusion" about. It is otherwise denied as to the factual accuracy of her understanding and conclusion.

61. The fact set forth in the last sentence of the paragraph is denied. As to the facts otherwise set forth in the paragraph they are admitted, but only to the extent they set forth what Montiero testified to during her deposition testimony.

62. The fact is admitted.

63. The facts are admitted.

64. The facts are admitted.

65. The facts are admitted.

66. The fact is admitted.

67. The facts are admitted.

68. The facts are admitted.

69. The facts are admitted, but denied to the extent that they imply that Triton could have recovered costs incurred as a result of the rework from the Corps.

70. The facts are denied.

71. The facts are admitted except to the extent that there is an implication that the Indemnitors are, in fact, obligated under the circumstances to comply[1].

---

[1] Paragraphs 70 through 77 of the Plaintiff's Statement are derived solely from Ms. Montiero's Affidavit. In Connecticut, in order to be considered by the Court, an Affidavit must be signed and sworn to in the presence of a notary public or other person authorized to administer oaths. While signed, Ms. Montiero's "Affidavit" is otherwise defective because her oath was not taken before a notary. Accordingly, the Defendants suggest that her Affidavit not be considered by the Court. Nevertheless, the Defendants respond to Paragraphs 70 through 77 of the Plaintiff's Statement.

       Moreover, the statement that the Indemnitors "have refused to comply" is denied.

72. The facts are denied.

73. The facts are admitted to the extent that the Montiero Affidavit indicates such. However, the facts are denied to the extent they indicate that any alleged costs are "recoverable under… the Indemnity Agreement", and to the extent that the alleged amount is entirely recoverable.

74. The facts are admitted to the extent that the Montiero Affidavit indicates such. However, the facts are denied to the extent they indicate that any alleged costs are "recoverable under… the Indemnity Agreement."

75. It is admitted that the Indemnitors have not reimbursed Travelers, but denied to the extent that the paragraph implies that the Indemnitors are, under the circumstances of this case, required to make any such reimbursement. Moreover, the facts are denied to the extent that they imply that the Indemnitors have refused to comply should an indemnity obligation be determined.

76. The facts are denied.

77. The fact is denied.

## II. <u>Statement of Genuine Issues of Material Fact.</u>

In addition to having denied certain factual issues set forth in Travelers' Statement of Facts, Triton submits that the following facts are in dispute and must be decided by the trier of fact[2]:

1. Contrary to Reliance/Traveler's assertions, the Takeover Agreement was intended to confer rights and benefits upon Triton. At Paragraph 5, the Takeover Agreement states in relevant part that "The surety reserves all rights available to the surety or the principal in regards to the propriety of the Government's termination...." (Exhibit 18A). At Paragraph 8, the Takeover Agreement states in relevant part that "it was not intended to interfere with principal's rights and remedies in any dispute with the Government." (Exhibit 18A). Importantly, Reliance/Travelers and the Corps. Intended that the Takeover Agreement intended to confer rights and benefits upon Triton. (McLaughlin Deposition, pp. 250-262; McCollum Affidavit, p. 3.)

2. Reliance/Travelers intended to reserve and preserve all of Triton's claims regarding the Project and it was going to do that which was necessary to reserve and preserve Triton's claims. (McLaughlin Deposition, pp. 196, 286, 288.)

---

[2] The trier of fact would be a jury in this matter because Triton requested a jury trial as to its Counterclaims.

9

3. Reliance/Travelers indicated to Triton that if Triton performed the rework, Reliance/Travelers would do that which was necessary to reserve and preserve Triton's claims regarding the Project. (Boyd Affidavit, ¶17 and ¶19; McLaughlin Deposition, pp. 289-290.)

4. Triton in undertaking the performance of the rework relied on Reliance/Traveler's representations that Reliance/ Travelers would do that which was necessary to reserve and preserve Triton's claims regarding the Project. (Boyd Affidavit, ¶17 and ¶19.) Reliance/Travelers was aware that Triton was relying on the representations as a condition of performing the rework. (McLaughlin Deposition, pp. 276-277, 290; Boyd Affidavit, ¶86; Exhibit 17.)

5. Triton and Reliance/Travelers entered into a simple completion contract. Triton would perform the rework at its cost and expense and Reliance/Travelers would do that which was necessary to reserve and preserve Triton's claims regarding the Project. (Boyd Affidavit, ¶17 and ¶19; Bossard Deposition, pp. 263-264; Exhibit 8; McLaughlin Deposition, pp. 249-291.)

6. Triton was uniquely dependent upon Reliance/Travelers to submit to the Corps. its claim for the rework costs. (Boyd Affidavit, ¶18, ¶85 and ¶86; Exhibit 17; McCollum Affidavit, pp. 5 and 6.) The Corps. having defaulted Triton and tendered performance to Reliance/Travelers under the

Takeover Agreement, Triton was no longer in contractual privity such that it could assert against the Corps. any claims that arose subsequent to the default termination. (McCollum Affidavit, pp. 5 and 6.) Instead, any such claims would have to be pursued by Reliance/Travelers as the completing surety now in contractual privity with the Corps. (McCollum Affidavit, pp. 5 and 6.)

Triton agreed to incur the rework costs post-termination, because Reliance/Travelers agreed to reserve and preserve the claim by and through which Triton would recover its costs. (Boyd Affidavit, ¶17 and ¶19.) The only vehicle for Triton to get paid for the rework was through Reliance/Travelers following through on its commitment to reserve and preserve the claim. (Boyd Affidavit, ¶17 and ¶19; McCollum Affidavit, pp. 5 and 6.)

7. Triton submitted to Travelers for review a claim regarding the rework costs, not just a compilation of costs.

8. Reliance/Traveler's position is that Bossard's certification only related to the costs and not a certification as to a claim. (Plaintiff's Statement a)34.) However, Bossard understood that he was certifying a claim in accordance with the terms of the Contract (Bossard Deposition, p. 129).

9. Reliance/Travelers engaged in sponsorship of Triton's claim. (McCollum Affidavit, p. 6.)

10. Triton understood that Travelers certified and forwarded the claim to the Corps. in furtherance of the agreement that Reliance/Travelers would reserve and preserve Triton's claim. (Boyd Affidavit, ¶65.)

11. Triton expected that Reliance/Travelers, in furtherance of the parties' agreement and sponsorship of the claim, would allow an appeal to be taken of <u>any negative</u> decision by the contracting officer. (Boyd Affidavit, ¶53 and ¶71.)

The parties contemplated that the contracting officer would deny the claim (Boyd Affidavit, ¶51.) Bossard at the time he certified the claim had already concluded that he did not think the leaks were caused by design defects. (Bossard Deposition, pp. 171-174.) He forwarded the claim because he agreed that the ultimate determination on the issue should rest with somebody else involved in the disputes process to decide. (Bossard Deposition, pp. 86-87, p. 184.) He also agreed that the state of the information on the design defect issue was the same at the time he certified the claim, and at the time that Triton requested that an appeal of the contracting officer's decision be taken. (Bossard Deposition, p.158.) And yet, Reliance/Travelers refused to appeal the very same claim they had already certified, contrary to the parties' agreement.

12. Triton and the other Indemnitors did not undertake any obligation to Travelers. (Boyd Affidavit, ¶75.)

12

13. Reliance/Travelers asserts that "at all times hereto, Travelers has acted in good faith as surety...." (Plaintiff's Statement a)76.) This fact is in dispute. There are facts which create a reasonable inference when viewed in the light most favorable to the Defendants, from which a trier of fact could find, that Reliance/Travelers did not act in good faith. The determination of whether Travelers acted in good faith is one to be submitted to the trier of fact.

Amongst others, facts demonstrate that Reliance/Travelers was singularly interested in recouping its costs without regard to fulfilling the commitment to reserve and preserve Triton's claims and without completing the process that it had already begun so that Triton's reasonable expectations could be received. (Boyd Affidavit, ¶74; Montiero Deposition, pp. 160-170; Exhibit 50.)

Moreover, a reasonable juror could find that Travelers decided upon its cursory understanding of the CID investigation not to appeal the claim because they were concerned about liability it might have because of Bossard's certification of the claim, and that it decided not to appeal the claim to obviate that concern. (Bossard Deposition, pp. 231-234).

Additionally, a reasonable juror could find that Travelers failed to act in good faith:

(1) In that it failed to consummate a written Completion Agreement with Triton (Exhibit 507);

(2) In that it generally mishandled the relationship with Triton (Exhibit 507); and

(3) In that it failed to pass through Triton's extra claims to the Corps. (Exhibit 507).

Respectfully submitted,

TRITON MARINE CONSTRUCTION CORP., ET AL

By_____
JOHN J. O'BRIEN, JR., ESQ. (CT04856)
PECK AND O'BRIEN, P.C.
433 Silas Deane Highway
Wethersfield, Connecticut 06109
Telephone: (860) 563-5500
Facsimile: (860) 566-5520

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of January, 2005, the foregoing was mailed to the following counsel of record:

Bradford R. Carver, Esq.  
Eric Loeffler, Esq.  
Cetrulo & Capone, LLP  
Two Seaport Lane, 10th Floor  
Boston, Massachusetts 02210

Dale R. Martin, Esq.  
Barokas, Martin, Ahlers & Tomlinson  
1422 Bellevue Avenue  
Seattle, Washington 98122

_____  
JOHN J. O'BRIEN, JR., ESQ. (CT04856)  
PECK & O'BRIEN, P.C.  
433 Silas Deane Highway  
Wethersfield, Connecticut 06109  
Telephone: (860) 563-5500  
Facsimile: (860) 566-5520

Triton Marine.Travelers P&C.Defendant Triton's Local Rule 56(a)(2) Statement of Facts