# PECK AND O'BRIEN, P.C.

Attorneys At Law

FILED

2005 SEP 15 A 10: 11

U.S. DISTRICT COURT
September 7, 2005

433 Silas Deane Highway
Wethersfield, Connecticut 06109
Telephone: (860) 563-5500
Facsimile: (860) 563-5520
Please Reply To ☒

38 Granite Street
New London, Connecticut 06320
Telephone: (860) 701-0120
Facsimile: (860) 701-0696
Please Reply To ☐

101 Main Street
Chester, Connecticut 06412
Telephone: (860) 526-3066
Facsimile: (860) 701-0696
Please Reply To ☐

The Honorable Stephan R. Underhill
United States District Judge
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

Re:   Civil No. 3:02-cv-1500 (SRU)
      Travelers Property & Casualty Insurance Company
      v. Triton Marine Construction Corp., et al

Dear Judge Underhill:

At the conclusion of the June 23, 2005 Oral Argument on Plaintiff's Motion for Summary Judgment, Triton requested permission to provide the Court with a supplemental brief on the contract issues which had been raised during oral argument. The Court authorized Triton to ". . . point to additional evidence in the record by way of letter." (Transcript, p. 45.) We waited to forward such a letter until we received the transcript of the Motion Hearing, so as to be accurate in addressing the points raised by the Court. Moreover, we initially chose to withhold sending the letter until after a settlement conference. While the parties are still pursuing the scheduling of a settlement conference and it appears that such a conference is scheduled for October 19th, we now forward this letter.

The court inquired, "Help me find that contract (completion contract) in the record." (Transcript, p. 20.) From the context, we took this inquiry as a reference to terms of the completion contract. The existence of an agreement between Triton and its surety for performance of the re-work that the Corps. of Engineers ("COE") required cannot be gainsaid. The surety contracted with COE to complete the re-work by way of the Takeover Agreement, and then contracted with Triton to perform that re-work by way of a simple, implied completion contract. There must be an agreement between these parties which has, as its subject matter, completion of the required rework. (The General Agreement of Indemnity ("GAI") cannot be said to govern the completing surety – completing contractor relationship. That document says nothing about the principal performing work on behalf of the surety. Rather, the GAI deals with the obligation of the principal and indemnitors to indemnify the surety in the event of "Loss"). (MSJ, p. 2.)

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Two
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

      Triton asserts that from the following items in the record a trier of fact could well find that there existed an implied contract between the parties:

1.    Reliance's Terry McLoughlin clearly assented to an agreement, and to Triton's essential term. Indeed, he believed there was an agreement.

- McLoughlin Dep. at 268 (Exhibit C to O'Brien Affidavit):

    Q:    So you were satisfied that the concerns that Triton had (regarding reservation and preservation of Triton's claims against the government) were already adequately protected in the previous agreements?

    A:    Right.

    Q:    And what were those previous agreements?

    A:    The takeover agreement and the completion agreement.

- McLoughlin Dep. at 276-77. (Exhibit C to O'Brien Affidavit.)

    Q:    And did you understand that Triton was prepared to do that (perform the work at Triton's cost) because it understood that the parties' rights and remedies to recover for the rework costs at the end were preserved and protected?

    A:    No. My understanding was that this was something that had been discussed and agreed upon by myself and one of the Daves.

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Three
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

- McLoughlin letter April 27, 2000 (Ex. 63 to O'Brien Affidavit):

  "This letter confirms our agreement and understanding . . ." (regarding Triton serving as the surety's completion contractor for the rework).

- Boyd Aff., ¶17:   Describing the "<u>agreement</u> and understanding" (emphasis added) with Reliance.

2.   That same evidence of record shows that Triton's essential term – reservation and preservation by the surety of Triton's claim rights against the government – was a part of the agreement.

- Same as the exhibits listed in Paragraph 1 above.

- McLoughlin Dep. at 285-86 (Exhibit C to O'Brien Affidavit).

- McLoughlin Dep. at 288-92 (Exhibit C to O'Brien Affidavit).

3.   Travelers' Fred Bossard acknowledged that there was a completion agreement with Triton.  Bossard Dep. at p. 63, lines 7-10; p. 263, lines 22-24; p. 264, lines 5-8 (Exhibit B to O'Brien Affidavit).

4.   The parties intended that their agreement regarding the completion of the work should be reduced to writing.

- Boyd Aff., ¶¶17-19, 22.

- McLoughlin Dep. at 270-72 (Exhibit C to O'Brien Affidavit).

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Four
Re:     Civil No. 3:02-cv-1500 (SRU)
       <u>Travelers Property & Casualty Insurance Company</u>
       <u>v. Triton Marine Construction Corp., et al</u>

McLoughlin asked Triton to draft the writing, which it promptly did.

- Ex. 21 to O'Brien Affidavit.

- Opposition to Travelers' Motion for Summary Judgment ("OMSJ"), ¶¶24-25.

5.     Triton's ongoing effort to secure a response to the proposed written terms were thwarted by the inertia that resulted from the Travelers' takeover of Reliance.

- OMSJ, ¶¶26-29.

Significantly, when Travelers did respond many months later, its draft Completion Agreement did not exclude or take exception to Triton's proposed terms regarding reservation and preservation of Triton's claims against the government.

6.     Triton proceeded in accordance with the agreement that had been reached. (Boyd Aff., ¶17.) Triton fully performed as Travelers' completion contractor. Triton paid all costs of performing the work. The COE accepted the Triton work, as a result of which the surety had fulfilled all of its obligations to the government under its bond and the Takeover Agreement.

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Five
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

- NOTE: The surety should not be heard to argue that, because there was an indemnity obligation to pay a surety Loss, Triton did not materially change its position when it agreed to perform the rework on behalf of the surety. Triton had the option of refusing to perform further work after the Termination for Default was issued by COE. Triton believed strongly, as it still does, that the Termination was wrongful. If correct, Triton owed no obligation to perform the rework. The surety, accordingly, would owe no obligation under its bond. Triton had every right to take the position with its surety, indeed every right to insist, as bond principals often do in these circumstances, that the surety not accept the COE's performance tender. It is an element of that position that if the surety does elect to perform, it does so as a volunteer, which vitiates the duty to indemnify against Loss if the principal's position is sustained. Triton relinquished this right by agreeing to become the surety's completion contractor, but it did so upon the agreement that it would not be deprived of its right to claim and recover from the COE the significant cost it would expend performing the work the surety had committed to in the Takeover Agreement.

7.   Not only is there evidence from the record that the surety entered into an agreement with Triton as completion contractor and agreed to Triton's term (See Sections 1-3 infra), but, moreover, there is undisputed evidence from which the trier of fact may conclude that the surety initially undertook to fulfill its obligation when it certified and submitted the claim to the COE. (Boyd Aff., ¶65.) A question for the trier of fact remains whether the surety fulfilled its obligation when it did not allow Triton to appeal from the claim denial.

The court observed, and we concur, that the surety's commitment is ". . . in effect an agreement that no one is going to, no one is intending that Triton's rights be affected by this agreement." (Transcript, p. 23.) But after it received the Contracting Officer's claim denial, Triton's rights were adversely affected because the surety thereafter did not carry out its essential obligation as the pass-through agency for the appeal, which at that point was the only way Triton's

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Six
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

claim rights could be "preserved" as had been agreed. It is irreconcilably conflicting for the surety to agree that Triton's claim rights would not be adversely affected, and then to later claim that the surety owed no obligation to allow an appeal of the claim.

8. In the exchange with counsel, the Court observed that the completing surety – completion contractor relationship between the parties did not arise in the more typical "let's shake on it" exchange between the parties. (Transcript. p. 32.) Such an exchange, of course, is not an essential prerequisite of a contractual relationship. Seemingly in that same vein, the Court said, ". . . you don't have a contractual obligation. (Triton) proposed one that they wouldn't agree to." (Transcript, p. 28.) However, Triton again submits that the record supports such an agreement (See, Sections 1-4, 6-7 *infra*).

But, on the facts before this Court, more focus upon the manifestation of assent is called for. Connecticut is among the majority jurisdictions holding that "a manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined." Restatement (2nd) Contracts §18 (1981).

Because Connecticut contract law looks to substance rather than form, offer, acceptance and handshake rituals are not essential requirements of contract formation. "It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations." <u>Rahmati v. Mehri</u>, 188 Conn. 583, 587, 452 A.2d 638 (1982). Indeed, what <u>is</u> essential to formation, regardless of actual intent, is conduct from which a reasonable party could infer intent to enter a contract. See, <u>John J. Brennan Construction Corp., Inc. v. City of Shelton</u>, 187 Conn. 695, 709, 448 A.2d 180 (1982); *accord* <u>Pleines v. Franklin Construction Co., Inc.</u>, 30 Conn.App. 612, 617, 621 A.2d 759 (1993). <u>See, also</u>, RESTATEMENT (SECOND) CONTRACTS §19 (1981). The existence of such conduct, as an issue of fact, rests in the judgment of the jury, <u>Hydro-Hercules Corp. v. Gary Excavating, Inc.</u>, 166 Conn. 647, 652-653, 353 A.2d 714 (1974).

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Seven
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

Whether assent is manifest expressly or through conduct is relevant only to categorizing a contract as "express" or "implied", a distinction that, for the purposes of enforcement, is without a difference. See, Janusauskas v. Fichman, 264 Conn. 796, 804, 826 A.2d 1066 (2003).

The evidence of record shows the following:

- That there was a relationship between Triton and its surety regarding two subjects that were of critical importance to these parties: The surety needed to have the work which it had committed to under the Takeover Agreement performed for it; and Triton needed to be in a position where it would be able to achieve a disposition of its claims against the government. (Use of the term "its surety" is apt when dealing with the contract formation issue because both Reliance and Travelers involved themselves as Triton's surety in this process.)

- This relationship commenced in February of 2000, when the COE terminated Triton's contract for default and tendered the work to the surety. It continued to mid-July of 2002, when the surety announced definitively that it would not permit Triton to pursue an appeal. There is evidence from which the trier of fact could determine that if there was a "moment of formation", it could have taken place on multiple occasions within that period.

- Contract formation might not have been completed until the September-November, 2000 timeframe when Fred Bossard acted upon the surety's commitment to reserve and preserve Triton's claim against the government by certifying the claim, submitting it; and then recertifying it and resubmitting it to COE.

Triton submits regardless of the time of formation debate that there is sufficient evidence in the record as set forth in Sections 1-8, *infra*, by both words and conduct that there existed at the very least an implied completion contract between the parties.

The Honorable Stephan R. Underhill
United States District Judge
September 7, 2005
Page Eight
Re:   Civil No. 3:02-cv-1500 (SRU)
      <u>Travelers Property & Casualty Insurance Company</u>
      <u>v. Triton Marine Construction Corp., et al</u>

9.  At the Motion Hearing, there was an exchange between the Court and counsel which seemed to proceed on the assumption that since there was no written completion agreement, it must have been an oral agreement. (Transcript, p. 29) The evidence before this Court is replete with writings expressing various terms. The two essential terms, being Triton's performance of the work on behalf of the completing surety, and the surety reserving and preserving Triton's claim rights against the government, appear in virtually every one of these writings. Whether the agreement is found by the jury to be written, partly written, or even oral, it nonetheless is enforceable in accordance with the terms which the trier of fact, from all this evidence, finds to exist.

10. To the Court's inquiry as to whether there is evidence of bad faith (". . . what bad faith is there here, as opposed to [the surety making] a business decision that they didn't want to file the appeal?"), reference should be made to the seven points set forth at pp. 97-108, OMSJ. Any and all of these points provide evidence from which the jury could find the "confluence of circumstances" under the *PSE Consulting* test for determining whether the duty of good faith and fair dealings has been breached.

When it reviews the evidence of record, the Court is asked to consider that the trier of fact is not required to identify a moment of contract formation. The jury's deliberation is not shackled by the offer – acceptance paradigm, and it well might determine that the surety assented to this agreement by its words and conduct. In any event, Triton submits that there be sufficient evidence of an implied contract that there are issues of fact to be tried by the jury.

Respectfully submitted,

John J. O'Brien, Jr.
PECK AND O'BRIEN, P.C.

cc:   Brad Carver, Esq.
      David Boyd, Esq.
      Dale Martin, Esq.