UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRAVELERS PROPERTY & CASUALTY INSURANCE COMPANY | : NO. 3:02cv1500 (SRU) |
| Plaintiff, | |
| VS. | |
| TRITON MARINE CONSTRUCTION CO., INC., ET AL | |
| Defendants. | : MARCH 27, 2007 |

# MEMORANDUM IN SUPPORT OF MOTION FOR RULE 54(b) CERTIFICATION OF FINAL JUDGMENT

I.  **INTRODUCTION**

The Court's Ruling on the Plaintiff's Motion for Summary Judgment has left the remaining litigation in an uncertain procedural posture. There presently is a risk of separate, expensive and duplicative trials. The separateness and severability of the parties' claims against each other is beyond question. Plaintiff's indemnity claim against Defendants could exist with or without Defendants' Counterclaims. Defendants' Counterclaims arose, and would have been prosecuted, whether or not Plaintiff had asserted an indemnity claim. And yet, while the parties claims are severable, the overlap that exposes the parties and the Court to duplicative trials results from Defendants' defenses to Plaintiff's indemnity claim. The

evidence the Defendants will present, generally in support of their defense to the indemnity claim and particularly present with regard to their asserted Special Defenses closely tracks the evidence that would have been presented in support of Defendants' Counterclaims.

Defendants submit that an appropriate and workable solution to this situation lies in Fed. R. Civ. Pro. 54(b). A Rule 54(b) Certification of final judgment would spare the parties and the Court the potential, indeed the high probability, of duplicative jury trials. Should the Appellate Court agree upon appeal of the summary judgment, that one or more of the Defendants' Counterclaims present triable issues, all of the evidence could be presented to a jury once. Accordingly, Defendants move the Court for a Rule 54(b) Order certifying a final judgment regarding Defendants' Counterclaims.

## II.   LEGAL ARGUMENT

Fed. R. Civ. Pro. Rule 54(b) provides the procedural mechanism by which a Court may certify the finality of a fully adjudicated part of a lawsuit even though the entire lawsuit has not been concluded. Rule 54(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

By Opinion dated February 9, 2007, this Court granted summary judgment on Defendants' Counterclaims. In that same Opinion, the Court denied Plaintiff's Motion seeking

summary judgment on Plaintiff's indemnity claim against the Defendants. It must also be noted that the Defendants' Special Defenses to the Plaintiff's indemnity action survived summary judgment. Thus, the entire lawsuit has not been concluded. While the Defendants' Counterclaims have been fully adjudicated, the Plaintiff's indemnity claim against the Defendants and the Defendants' Special Defenses have not.

Because there has not been a completed adjudication of all claims between the parties, there presently is no final judgment from which Defendants can appeal. A Rule 54(b) Certification, however, will provide a final judgment from which the Defendants can appeal and given that there is "no just reason for delay" of an appeal, this Court should enter a Rule 54(b) Order. Defendants submit that entry of final judgment on the Counterclaims will work no prejudice to the Plaintiff, but instead will foster judicial economy and potentially avoid the time, expense and hardship of duplicate trials.

### A.    The Court's Entry of Summary Judgment is a Final Judgment on Defendants' Counterclaims.

The Court's threshold determination when dealing with an application under Rule 54(b) is to ascertain whether the requested certification deals with a court action that constitutes a final judgment. The Supreme Court decision in <u>Curtis-Wright Corp. v. General Electric Co</u>. is instructive:

> A district court must first determine that it is dealing with a "final judgment."
> It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate

> disposition of an individual claim entered in the course of a multiple claims action." (citing <u>Sears, Roebuck & Co. v. Mackey</u>, 351 U.S. 427, 436 (1956)).

446 U.S. 1, 7 (1980).

This Court's entry of summary judgment furnishes all of the requisite elements. The summary adjudication clearly is a "decision upon a cognizable claim for relief". It is "final" in that the adjudication is dispositive of all Triton claims against Plaintiff. The threshold prerequisites thus are satisfied.

### B. Rule 54(b) Certification is Appropriate Because There is "No Just Reason for Delay" of an Appeal of Defendants' Counterclaims.

In <u>Curtis-Wright</u>, supra, 446 U.S. at 8, the Supreme Court provided guidance as to what factors bear upon deciding whether the circumstances are such that "there is no just reason for delay":

> [I]n deciding whether there are no just reasons to delay the appeal of the individual final judgments in settings such as this, a district court must take into account judicial administrative interests as well as the equities involved.

The equities militate in favor of putting Triton in a position where it can appeal now to ascertain whether it has stated a triable claim. Equally the equities weigh in favor of both parties avoiding the burden and expenses of duplicative jury trials. Likewise, judicial administrative interests are best served if the Court is not put in a position where it tries to a jury now the Travelers' indemnity claim and the Defendants' defenses to that claim; and later is called upon to try to a second jury, upon substantially the same evidence, such of the

Defendants' Counterclaims that the Appellate Court may determine should be remanded for trial.

Severability of the Defendants' Counterclaims from Travelers' indemnity claim, from the legal if not the evidentiary aspect, can be demonstrated by answering the question "will adjudication of the indemnity claim dispose of the counterclaim?" Clearly not. The ultimate determination is the application of the facts to different legal theories. *See*, <u>Ginett v Computer Task Group, Inc.</u>, 962 F.2d 1085, 1096 (2d Cir. 1992). A judgment on the indemnity claim could be separately enforced, and any judgment Defendants may ultimately obtain on the Counterclaims can also be separately enforced. *See*, <u>Cullen v. Margiotta</u>, 811 F.2d 698, 718 (2d Cir., 1987).

In short, a decision by the Appeals Court on Defendants' Counterclaims would not be rendered moot by a decision from the District Court on Plaintiff's indemnity claim. Moreover, any appeal of a decision on Plaintiff's indemnity claim would not require the Court of Appeals to revisit the same issues as had been decided in the Appeal on Triton's Counterclaims. The Court in <u>Brunswick Corp. v. Sheridan</u>, 582 F.2d 175, 185 (2d Cir., 1978), suggests that a key factor in Rule 54(b) application is determining whether "on any resolution of the pending claim, the Court's determination of the appealed issue would stand and did not have to be made in the alternative". This is the situation because, evidentiary overlap notwithstanding, the ultimate issues presented by Plaintiff's claim and Defendants' Counterclaims are distinct and severable.

Only those claims "inherently inseparable", from or "inextricably interrelated" to, each other, are inappropriate for Rule 54(b) Certification. *Ginett*, 962 F.2d at 1096. In contrast to the competing Triton and Travelers' claims, the Second Circuit defines "inherently inseparable" claims as those which are so closely interrelated that (i) the appellate court would necessarily have to reach the merits of one or more of the claims not appealed, and/or, (ii) the district court's disposition of one or more of the remaining claims would render the appellate opinion advisory or moot. *Id.* at 1095.

A determination under Rule 54(b) rests within the sound discretion of the District Court. *Curtiss-Wright*, 446 U.S. at 8, 100 S.Ct. at 1465. Based upon its background with the case, the Court will recognize that Travelers' claim derives from the General Agreement of Indemnity between Reliance and Triton. The Triton claims, on the other hand, are based upon Travelers' conduct in respect to multiple relationships– its acts, omissions, and breaches of duty – that occur after Travelers purported to step into the shoes of Reliance. The parties have distinct and different claims. Existence of one is not dependent upon existence of the other. Resolution of one does not resolve the other. Accordingly, there is no chance that the Second Circuit, having heard and decided upon an appeal from final adjudication on Triton's Counterclaims, would be called upon to revisit the merits of those same claims on a subsequent appeal.

### C. Defendants Will Be Presented With An Undue Hardship, Absent the Court's Rule 54(b) Certification

The Second Circuit has cautioned that "54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which [54(b)] confers upon the trial judge should be used only in the infrequent harsh case." *See, e.g., Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir., 1980). That statement of principle, however, should be narrowly viewed. More recent cases have suggested that the District Court should not "hide" behind the "infrequent harsh case" language. Instead, the focus should be upon proper judicial administration. *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1095 (2d Cir., 1992). Moreover, a "harsh case" exists where an immediate appeal would alleviate some dimension of hardship or injustice. *Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 128-29 (2d Cir., 2000).

It is clear from Second Circuit opinions that "harshness or injustice" can translate to situations, such as the present case, where expensive, duplicative trials can be avoided without prejudicing the prosecution of surviving claims. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21 (2d Cir., 1997) (citation omitted). The avoidance of duplicative trials comports with the policy objective underlying Rule 54(b) -- to foster sound judicial administration:

> Sound judicial administration, however, cannot be confined to economy or efficiency in just the appellate court; if that were the standard, we should return to the common law's "one suit, one appeal" standard. Rather, sound judicial administration must involve a proper regard for the duties of both the district court

7

and the appellate court. We should avoid the possibility that the ultimate
dispositions of the claims remaining in the district court could either moot our
decision on the appealed claim or require us to decide issues twice.

Ginett, 962 F.2d at 1095 (2d Cir. 1992) (citing Curtiss-Wright, 446 U.S. at 8).

Absent Rule 54(b) Certification, there is significant probability of lengthy, duplicative trials. The chain of events that ushered the parties into this litigation involves multiple witnesses and dozens of documents. It covers a three-year span of time extending from Travelers stepping in while Triton and Reliance were negotiating details of a Completion Agreement; it extends through Triton's performance of the rework, which culminated with Travelers' three-day review and subsequent certification of Triton's claim. This was followed by Travelers passing-through (sponsorship) of the Triton claim to the Corps of Engineers; and, ultimately, after months of fruitless dialogue between the parties, Travelers blocking the appeal from the adverse decision by the Corps of Engineers' Contracting Officer – an appeal which the parties knew from the outset of their relationship was the only mechanism that would allow Triton to recover the $2 plus million it had spent performing the disputed rework. That course of events, and the acts, omissions and breach of duty by Travelers would constitute the evidentiary foundation to Defendants' defense to the Travelers' indemnity claim. It would also be the heart of Defendants' affirmative case upon any remand from the Second Circuit.

**(1)  There Is A Duplication of Evidence To Be Presented in Defense
Of Plaintiff's Indemnity Claim and Any of Defendants' Counterclaims.**

Defendants have marshaled evidence in support of numerous defenses to the Plaintiff's indemnity claim, among them the following:

(i)   Plaintiff's breach of the duty of good faith and fair dealing;

(ii)  Plaintiff's failure and refusal to reserve and preserve Defendants' rights and contract interests with respect to recovery of the rework costs;

(iii) Plaintiff's failure and refusal to mitigate the costs of performing the rework;

(iv)  The Unclean Hands Bar to Plaintiff's enforcement of its indemnity claim;

(v)   The waiver and estoppel bar to Plaintiff's enforcement of its alleged indemnity claim;

(vi)  Plaintiff's failure to prove that its assignment from Reliance entitled it to prosecute an indemnity claim against Defendants; and

(vii) Plaintiff's billing to Defendants of $13,800 in additional bond premium based upon an anticipated increase in the amount of Triton's contract with the Corps, which would result from proceeds generated by the rework claim; and then preventing Defendants from prosecuting that claim, and refusing to grant a credit for the additional premium that had been charged.

A brief exposition of the Triton defenses, and the evidence that will be offered as proof of the defenses, serves to illustrate the likelihood of "lengthy, duplicative trials". Avoidance of

the expense and inefficiency that attends twice putting on the same case is the purpose for Defendants bringing this Rule 54(b) Motion. The Rule itself and the case law interpreting the Rule clearly seek to eliminate situations which carry the potential for twice calling the same witnesses, twice developing the same evidence, twice elucidating the same themes, and even eliciting virtually identical answers to the same questions. The following brief recapitulation of Triton defenses to Plaintiff's indemnity claim shows that, in order to develop the evidence which will validate those defenses, it will be necessary to put forth virtually all of the testimony, the documentary evidence, and even the expert opinions as would have been proffered in support of its Counterclaims.

- Breach of the Duty of Good Faith and Fair Dealing.

Triton is party to separate contractual relationships with Travelers: one is the GAI; at least to the extent Triton is bound by the Reliance-Travelers assignment to which Triton was not a party. Another is the completion agreement which unquestionably was entered into, and indisputably was fully performed by Triton, even though Travelers successfully prevented the agreement from being reduced to written form. The duty of good faith and fair dealing is an ingredient of both contracts. In addition to being an underpinning of Triton's affirmative claims, breach of that duty constitutes a defense to Travelers indemnity claim. Evidence of the breach permeates the entire Triton-Travelers' relationship from its inception to the point at which Travelers prevented Triton from pursuing the rework claim. All vital aspects of that

relationship would be presented as evidence in separate trials of either party's claim against the other, or in a single trial of both claims.

- <u>Travelers' Failure and Refusal to Mitigate</u>

The Completion Agreement, like all contracts, carries with it an implied obligation that neither party, by its acts or omissions, will make the other party's performance unnecessarily costly. The completion contract, and all contractual relationships between these parties, requires that each of the parties take reasonable steps to mitigate the damages he might suffer on account of the other's performance. Triton's evidence in support of its Counterclaims, and its evidence in support of Travelers' indemnity claims, will show that Travelers could and should have marked up extras and claims that were submitted to the Corps during and after the rework. These markups would have exceeded $300,000. Taking the point a step further, Travelers would have received all proceeds from the Triton rework claim because of its contractual privity with the government, and thus could have recouped any and all indemnity losses before paying remaining proceeds over to Triton – provided, of course, it had not wasted this asset by preventing Triton from pursuing the rework claim.

- <u>Travelers' Failure and Refusal to Reserve and Preserve Triton's Rework Claim</u>

Triton evidence in support of the counterclaim includes the formation and performance of a completion contract. This relationship originates with Reliance, and carries through the entire duration of Travelers involvement with Triton. The overlapping, duplicative evidence

will include the history of this relationship, and proof that even though Travelers avoided signing a written completion agreement, the course of conduct regarding Triton's rework claim carried with it a duty to preserve, protect, and not prejudice the Triton rework claim. More specifically, even if, as an original matter, Travelers was not contractually obligated to do this, Travelers took stewardship of Triton's rework claim by receiving and acting upon it; by spending three days reviewing and revising it; and then by certifying the claim and submitting it to the Corps Contracting Officer for payment.

- Waiver, Estoppel and Unclean Hands

The key points of the parties' relationship over a three-year period, and the evidence regarding Travelers taking stewardship of Triton's rework claim, will provide evidentiary support for a waiver or estoppel disposition of both Triton's affirmative claims and Travelers' indemnity claim. That evidence also invokes the unclean hands doctrine.

To develop the argument further runs the risk of redundancy. The pivotal point is that, unless the Court's summary judgment ruling somehow forecloses admission of this evidence in defense against the indemnity claim, a trial upon remand would essentially mirror the defense case against the Travelers' portion of the case which is now set for trial.

### III.   CONCLUSION

All Rule 54(b) prerequisite elements are present in this case. The Court's ruling on Plaintiff's Motion for Summary Judgment is final with respect to Triton's Counterclaims, and has fully disposed of Triton's entire affirmative case. General Acc. Ins. Co. of America v. J.K. Chrysler Plymouth Corp., 139 F.R.D. 585, 587 (E.D. NY 1991). The required determination that the adjudicated Counterclaims constitute claims for relief that are "separable from and independent of the remaining claims in the case" has been satisfied. Liberian Vertex Transports, Inc. v. Assoc. Bulk Carriers, Ltd., 738 F.2d 85, 87-88 (2d Cir. 1984) (quoting Brunswick Corp. v. Sheridan, 582 F.2d 175, 182 (2d Cir. 1978)). Indeed, the separateness of the indemnity claim from Triton's Counterclaims exceeds the Second Circuit standard. Under that standard claims normally are treated as separable within the meaning of 54(b) if they involve at least some different questions of fact and law, and thus could be separately enforced; or if "different sorts of relief" are sought. Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 21 (2d Cir. 1997) (citations omitted).

The Second Circuit has recognized that the situation of the parties should be factored into the Court's determination on a request for Rule 54(b) Certification. See, Cullen, 811 F.2d at 711. Weighing that element here, it is clear that Travelers' interest would not be adversely affected. Its rights on the indemnity claim, such as they may be, do not diminish, and such entitlement as Travelers may have to prejudgment interest would continue to accrue on the amounts it is owed. On the other hand, the Counterclaims are intertwined with defenses to

the indemnity claims, and neither the parties nor the Court should be exposed to the risk that this evidence will have to be presented twice in separate trials.

Defendants recognize that there is an implicit assumption underlying the grounds being submitted in support of this Rule 54(b) Motion. It has necessarily been assumed that Defendants' defenses to the Travelers' indemnity claim are litigable. If it should be the case that this Court views those defenses as having been subsumed by the summary judgment ruling; or if the Court were to declare that the summary judgment ruling collaterally estopps Triton from proffering its evidence in support of those defenses, then the "sound judicial administration" element supportive of the Rule 54(b) Certification presumably disappears. A defenseless trial of Travelers' indemnity claim would not be a lengthy, expensive and needlessly duplicative rendition of a trial of the Defendants' Counterclaims upon remand, though the result of that trial most assuredly and directly would affect Travelers' entitlement to collect on its indemnity claims. Short of a determination that Triton's defenses are foreclosed, however, it is submitted that Rule 54(b) Certification is appropriate and beneficial to the parties and to the Court.

RESPECTFULLY SUBMITTED,
DEFENDANT, TRITON MARINE CONSTRUCTION CORP.

By_____
JOHN J. O'BRIEN, JR., ESQ. (CT04856)
**PECK AND O'BRIEN, P.C.**
Post Office Box 290942
Wethersfield, Connecticut 06129-0942
Telephone: (860) 563-5500

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of March, 2007, the foregoing was mailed to the following counsel of record:

Bradford R. Carver, Esq.
**Hinshaw & Culbertson, LLT**
One International Place, 3rd Floor
Boston, Massachusetts 02110
*Facsimile: (617) 213-7001*

_____
JOHN J. O'BRIEN, JR., ESQ.