UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRAVELERS PROPERTY & CASUALTY INSURANCE CO.<br>　　　Plaintiff, | : Civil No. 3:02CV01500 (SRU)<br>:<br>: |
| v. | : |
| TRITON MARINE CONSTRUCTION CORP., et al.<br>　　　Defendants. | :<br>: November 16, 2007 |

**OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

　　Defendants, Triton Marine Construction Corp., R. John Armstrong, Patricia B. Armstrong, Leola E. Daly, M. Jean Searle, William F. Searle, Wendell E. Webber, Janice K. Webber, Sandra F. Prestridge, A. Burton Prestridge, Edward A. Wardell, Carolyn S. Wardell, Jerry W. McDonald, Mary J. McDonald, and the Estate of Eugene F. Daly (hereinafter "defendants" or "Triton") respectfully submit this Opposition to Plaintiff's Motion for Summary Judgment [Doc. #91].

**Preliminary Statement**

　　For all practical purposes, the central issues in this case were decided on February 9, 2007, when this Court rejected, as a matter of law, defendant Triton's counterclaims against Travelers. See Ruling on Motion for Summary Judgment, pp. 9-21 [Doc. #71] ("2/9/07 Summary Judgment Ruling"). Because the counterclaims adjudicated in the 2/9/07 Summary Judgment Ruling raised substantially the same claims asserted by Triton as Affirmative Defenses in opposition to Travelers' claim for indemnification, Triton is now left without viable grounds to oppose Travelers' Motion for Summary Judgment dated September 13, 2007 [Doc. #86], which seeks judgment against Triton on Count I of Travelers' Complaint. Thus, although Triton

formally opposes summary judgment in Travelers' favor, we acknowledge that Travelers is entitled to summary judgment at this time if this Court adheres to the substance of its 2/9/07 Summary Judgment Ruling. See Part I below.

We do not acknowledge, however, that Travelers is owed any money. Contrary to Travelers' claim in its pending motion, Triton has now paid Travelers all sums to which it would be entitled in its claim for indemnification. By letter dated August 14, 2007, Travelers provided Triton with the sworn certification of Travelers' alleged losses as required by this Court's 2/9/07 Summary Judgment Ruling. Triton thereafter paid all amounts due under Traveler's demand (totaling $363,197.50) and owes Travelers nothing. See Part II below.

Finally, Travelers is not entitled to prejudgment interest under the General Indemnity Agreement (GAI) or Connecticut law. See Travelers Property and Casualty Insurance Company's Notice of Correction to Motion for Summary Judgment, dated September 21, 2007, at 1-2 [Doc. #91] (noting that "Travelers wishes to make clear that in addition to the remaining principal owed, Travelers is still seeking all accrued but unpaid prejudgment interest as allowed by law and the underlying indemnity agreement"). The GAI allows interest only from "the date of Reliance's demand" under the GAI – and under that GAI, as this Court has already held in its previous summary judgment ruling, Triton did <u>not</u> have a legal obligation to pay Travelers for any alleged loss <u>until Travelers provided a sworn statement itemizing the amounts due</u>. See 2/9/07 Summary Judgment Ruling, at 9.[1] As noted above, Triton paid the amounts due once it received such a certification, and therefore no interest is due. See Part III below.

---

[1] Likewise, under Connecticut law, the Connecticut prejudgment interest statute (Conn. Gen. Stat. § 37-3a) permits the award of interest only for the <u>wrongful</u> detention of money. There could be no wrongful detention here until Travelers fulfilled its contractual condition precedent to payment by providing the required certification.

2

**FACTS PERTINENT TO THE PENDING MOTION**

This is the second round of summary judgment briefing in this case, and thus we will set forth here only those particular facts relevant to the pending motion. We hereby incorporate by reference the factual claims made by defendants in their Memorandum of Law in Opposition to Travelers Property & Casualty Insurance Company's Motion for Summary Judgment [Doc. #58], filed January 5, 2005, and the supporting Statement of Material Facts [Doc. #59].

1. **The Complaint and Cross-Complaint**

Travelers sued Triton and the individual defendants in a three count complaint dated August 26, 2002, claiming that it incurred money damages as a result of costs and payments made by Travelers under a "Payment and Performance Bond" issued by Travelers pursuant to a "General Indemnity Agreement" in connection with a construction project undertaken by Triton for the United States Army Corps of Engineers (the "Abiquiu Dam Project"). See Complaint [Doc. #1]. The monies at issue were for consulting and attorney's fees allegedly incurred by Travelers in January 2002 and April 2002.

On or about January 3, 2003, defendants filed an Answer, which contained Affirmative Defenses and a nine count counterclaim against Travelers. See Answer, Affirmative Defenses and Counterclaim [Doc. #19]. The gravamen of both the Affirmative Defenses and the Counterclaims was that Travelers was liable to Triton, rather than vice versa, because Travelers had breached its duties to Triton in connection with a dispute that arose with the Army Corps of Engineers over very substantial "rework" expenses incurred by Triton in the Abiquiu Dam project. Id. Triton claimed that Travelers took control of that dispute and then forfeited Triton's rights to recoup the rework expenses imposed by the Army Corps of Engineers against Triton, thereby causing Triton millions of dollars in damages. Id. See also Memorandum of Law in

3

Opposition to Travelers Property & Casualty Insurance Company's Motion for Summary Judgment, at pp. 94-97 [Doc. #58], filed January 5, 2005.

### 2. The Previous Motion for Summary Judgment, and Ruling Thereon

On September 30, 2004, Travelers moved for summary judgment on its indemnity claim and each of Triton's counterclaims. [Doc. #43] Defendants opposed that motion [Doc. #58], and argument was heard by the Court on June 23, 2005 [Doc. #64].

On February 9, 2007, this Court issued a written ruling denying Travelers' motion for summary judgment on its indemnity claim, but granting that motion with respect to defendants' counterclaims. Ruling on motion for Summary Judgment [Doc. #71]. In particular, the Court denied summary judgment on Travelers' indemnity claim because it appeared that Travelers had failed to provide Triton an "itemized statement of LOSS sworn to by an officer or authorized representative of [TRAVELERS] . . . ." Id. at 9. Additional aspects of the Court's 2/9/07 Summary Judgment Ruling will be discussed below as they become pertinent to the present motion.

### 3. Post-Summary Judgment Events Relevant to the Present Motion

Evidently desiring to cure the deficiency pointed out in the Court's 2/9/07 Summary Judgment Ruling, Travelers sent Triton a "Sworn Demand Letter" dated August 14, 2007. See Letter from Sherrie L. Monteiro of Travelers to Triton's President, David Boyd, dated August 14, 2007 ("Demand Letter") (Boyd Aff. at Ex. A).[2] The Demand Letter directed Triton to remit payment totaling $368,038.09, but the "Itemized Statement of Loss" attached to the letter only included items totaling $345,861.55 (a $22,176.54 difference). Id.

---

[2] All of the exhibits (A through G) referenced in this brief are attached to the Affidavit of Triton's President, David Boyd ("Boyd Aff."). Mr. Boyd's affidavit is attached to Defendants' Local Rule 56(a)2 Statement filed herewith.

4

By letter dated September 14, 2007, Triton responded to the Demand Letter by tendering payment in the amount of $332,491.55. See Letter from David Boyd, Triton's President, to Sherrie L. Monteiro, dated September 14, 2007 ("Triton's 9/14/07 Response Letter") (Boyd Aff. at Ex. C). Triton's letter explains that Triton's remittance is $13,370 less than the amount itemized in the Demand Letter because Travelers' itemization fails to include a payment in that amount made in 2001. See id.

Importantly, Triton's 9/14/07 Response Letter expressly states two key reservations:

First, Triton makes it clear that the payment is made without "admitting any liability, or the amount of damages, nor is Triton waiving any of our claims." Id. at p.3. In particular, the letter goes on to state that "Triton intends to appeal the dismissal of our counterclaims against Travelers. We consider this payment to be another element of the damages that Triton has suffered as a result of Travelers' conduct." Id.

Second, and directly relevant to the pending motion, Triton states (in response to Travelers' demand for interest) that Travelers is not entitled to any interest for any period prior to the date of the Demand Letter. Id. at 2. This point is addressed further in Part III below.

Travelers accepted and negotiated Triton's payment. See Boyd Aff. at ¶ 7.

There has since been additional correspondence between the parties since these initial letters. On September 21, 2007, Travelers' Sherrie Monteiro replied to Triton's 9/14/07 Response Letter. See Letter from Ms. Monteiro. (Boyd Aff. at Ex. D) Ms. Monteiro's letter purports to explain the $22,176.54 discrepancy between the demand amount and the itemized amount contained in the Demand Letter and re-asserts Travelers' demand for $368,038.09. The letter is certified by Ms. Monteiro, as required.

In response, Triton accepted Traveler's explanation for the discrepancy to the extent of $17,335.95, which Ms. Monteiro attributed to costs incurred by Travelers for a consultant named Arvin Daum, and Triton therefore remitted payment in that additional amount by correspondence dated October 17, 2007. See Letter from David Boyd, Triton's President, to Sherrie L. Monteiro, dated October 17, 2007 (Boyd Aff. at Ex. E).[3] At the same time, however, Triton rejected Traveler's additional claim for $4,840.59 as unsubstantiated. With respect to the $13,370 amount withheld from its remittance of September 19, 2007, moreover, Triton reiterated its objection to all but $1,624 of that amount, leaving $11,746 still in dispute. Id. at p.2.[4]

To summarize, Triton has now paid Travelers a total of $363,197.50 of the $368,038.09 principal amount claimed due by Travelers. See Boyd Aff. at ¶ 17. A total of $4,840.59 thus remains unpaid. The particular facts underlying the disputed sums are addressed in Part II below. A summary of the relevant correspondence, which are attached as Exhibits hereto, is set forth in the following chart:

| Exhibit | Description |
|---|---|
| A | Travelers' August 14, 2007 updated Demand Letter |
| B | September 14, 2007 e-mails between Travelers and Triton |
| C | Triton's September 14, 2007 response to Ex. A |
| D | Travelers September 21, 2007 response to Ex. C |
| E | Triton's October 17, 2007 response to Ex. D |
| F | Triton's October 16, 2007 letter regarding the uncredited 10/29/01 payment made to Travelers |
| G | Triton's November 9, 2007 payment letter to Travelers |

---

[3] Subject, of course, to the same reservation of rights as set forth previously.

[4] Triton's explanation with respect to the $13,370 amount (and the $1,624 adjustment) is supplemented in a letter from Mr. Boyd to Ms. Monteiro dated October 16, 2007. See Boyd Aff. at Ex. F.

# ARGUMENT

I. **ASSUMING THAT THIS COURT ADHERES TO THE SAME CONCLUSIONS CONTAINED IN ITS 2/9/07 SUMMARY JUDGMENT RULING, TRAVELERS NOW WOULD BE ENTITLED TO SUMMARY JUDGMENT ON ITS INDEMNITY CLAIM AS WELL.**

Travelers' claim for indemnification under its General Indemnity Agreement (GAI) essentially presents the "mirror image" of Triton's counterclaims against Travelers, which were decided in Travelers' favor in this Court's summary judgment ruling decided on February 9, 2007. The primary substantive dispute between the parties in this litigation has always been whether Travelers acted improperly when it declined to pursue (or allow Triton to pursue) recovery of millions of dollars in rework costs from the U.S. Army Corps of Engineers in connection with the Abiquiu Dam Project (the Claim for Rework Costs). Triton raised its Claim for Rework Costs, in one form or another, both in its Affirmative Defenses and its Counterclaims in this lawsuit. See Triton's Answer, Affirmative Defenses & Counterclaims, dated January 2, 2003 [Doc. #19], especially Affirmative Defenses D, E, F & G and Counterclaims, First Count through Eighth Count.[5]

This Court flatly rejected Triton's Claim for Rework Costs when it granted summary judgment against Triton on its counterclaims. See 2/9/07 Summary Judgment Ruling at pp. 9-21.[6] At that time, the Court did not reach Triton's Affirmative Defenses based upon the same essential grounds (Affirmative Defenses D, E, F & G) because Travelers had not, at that time, yet

---

[5] Triton's Affirmative Defense A has not been pursued; Affirmative Defense B (failure to satisfy condition precedent) evidently was the basis for the Court's denial of summary judgment on Travelers' indemnification claim, see 2/9/09 Summary Judgment Ruling at p. 9; and Affirmative Defense C was rejected in the Court's summary judgment ruling, see id. at 3 n.4.

[6] Triton withdrew its counterclaim under the Connecticut Unfair Trade Practices Act (Counterclaim, Ninth Count). 2/9/07 Summary Judgment Ruling at 1 n.2.

provided Triton with the certification that was a condition precedent to payment. 2/9/07 Summary Judgment Ruling at p. 9.

Now that Travelers has provided the required certification, see pp. 3-4 above, it is clear that Affirmative Defenses D through F are ripe for adjudication. Triton continues to maintain that these Affirmative Defenses, at the very least, raise triable issues, and Triton hereby incorporates and renews all of the factual and legal claims raised in its opposition to summary judgment during the previous round of briefing. See Memorandum of Law in Opposition to Travelers Property & Casualty Insurance Company's Motion for Summary Judgment [Doc. #58], filed January 5, 2005, and the supporting Statement of Material Facts [Doc. #59]. However, Triton candidly acknowledges that its Affirmative Defenses must fail if this Court adheres to its 2/9/07 Summary Judgment Ruling, because those Affirmative Defenses are substantively not severable from the Counterclaims that were rejected by the Court. We urge the Court to reverse its prior ruling in this regard, of course, but we realize that such an outcome is unlikely at this point.[7]

## II. SINCE RECEIVING THE TRAVELERS' CERTIFICATION ON SEPTEMBER 14, 2007, TRITON HAS NOW PAID TRAVELERS ALL SUMS DUE UNDER THE GENERAL INDEMNIFICATION AGREEMENT.

Faced with the Court's 2/9/07 Summary Judgment Ruling, Triton determined to accomplish two goals. The first goal was to assure that an appeal was available without any relinquishment of its rights and legal position, and to do so without consuming the resources of this Court (or the litigants) by engaging in a trial of whatever tangential issues arguably might have survived the summary judgment. Triton's second goal was to prevent the accrual of any

---

[7] No waiver of rights in intended. As the Court knows, Triton intends to appeal the summary judgment(s) once final judgment enters.

8

interest that might be recoverable on its anticipated obligation to Travelers under the Court's ruling, once Travelers provided the certification required under the GAI, and to do so, again, in anticipation of a successful appeal and remand for trial, without relinquishing any right or legal position arising from or relating to Travelers' indemnity claim.

As noted above, Travelers provided the required certification to Triton by letter dated August 14, 2007. (Boyd Aff. at Ex. A) Under letter dated September 14, 2007, Triton transmitted a draft to Travelers in the amount of $332,491.55. (Boyd Aff. at Ex. C) This draft was accepted and negotiated by Travelers upon receipt. After Travelers had responded to a Triton inquiry regarding one of the certified items, Triton transmitted a second draft to Travelers in the amount of $17,335.95 under letter dated October 17, 2007. (Boyd Aff. at Ex. E) This draft was also accepted and negotiated by Travelers upon receipt. Triton transmitted a third payment of $1,624 on November 9, 2007 after clarification on a partial distribution of the October 29, 2001 payment to Willis for a broker's commission. (Boyd Aff. at ¶¶ 12-16; id at Ex. G) With those three payments, Triton has remitted the full amount of Travelers current demand excepting two sums. The first excepted amount is $11,746, the payment made to Travelers on October 29, 2001. (Boyd Aff. at ¶¶ 6, 12-16; Exs. F, G) This payment never was credited by Travelers against any of its "demands" made to Triton. The second excepted amount is $4,840.59 for an item Travelers identified only as "for claim Travelers." Triton has pointed out to Travelers that this has to be an accounting error. (Boyd Aff. at ¶¶ 9-10; Ex. E) The billing pre-dates Travelers takeover from Reliance. Until the effective date of that takeover, Reliance handled the Triton matter exclusively. Triton was not even advised of the takeover until after it was *fait accompli*. Id. Travelers has been unable or unwilling to provide any documentation or corroboration for this item.

9

To summarize, the following numbers reflect the correct financial accounting in response to the demand made by Travelers in this matter:

| | |
|---|---|
| $332,491.55 | 9/14 Triton Payment |
| 11,746.00 | 10/29/01 Triton Payment |
| 1,624.00 | 11/9/07 Triton Payment |
| 17,335.95 | Daum Payment |
| 4,840.59 | Travelers' Accounting Error |
| $368,038.09 | Total Amount of Travelers' Demand |

Triton respectfully submits that no further sums are due to Travelers under the GAI, even on the assumption (which Triton vigorously disputes) that the GAI is enforceable by Travelers against Triton under the circumstances of this case.

### III.  TRAVELERS IS NOT ENTITLED TO PAYMENT OF INTEREST UNDER CONN. GEN. STAT. § 37-3a BECAUSE INDEMNITY WAS NOT LEGALLY OWED UNTIL TRAVELERS COMPLIED WITH THE CONTRACTUAL CERTIFICATION REQUIREMENT.

#### A.  <u>Travelers Is Not Entitled To Prejudgment As A Matter of Law</u>

In its 2/9/07 Summary Judgment Ruling, this Court denied Travelers' motion for summary judgment on the grounds that Travelers' authorized representative "did not swear to the itemized statement [setting forth Traveler's claimed "loss"], <u>a requirement under the indemnity agreement.</u>" 2/9/07 Ruling on Summary Judgment at 9. Travelers has not taken issue with the Court's holding, but rather purports to have "rectified" the "deficiency" in its prior demand by supplying the required certification. See Memorandum of Law in Support of Travelers Property and Casualty Insurance Company's Motion for Summary Judgment, dated September 13, 2007, at 3 (stating that "the sole deficiency noted in this Court's previous decision has been rectified") [Doc. #87]. This Court's prior holding, and Travelers' acknowledgment of the deficiency in its prior demand for payment, demonstrate why Travelers is not entitled to an award of prejudgment interest here.

As this Court's summary judgment ruling indicates, Triton was not contractually required to pay Travelers any claimed "loss" under the GAI until Travelers provided it with an "itemized statement of LOSS sworn to by an officer or authorized representative of Reliance . . . ." GAI at p.13, ¶ 28. This contractual condition precedent to payment makes perfect sense: when it comes to payment of monies for alleged losses incurred by the surety, the indemnitors should not be required simply to take Travelers' unsworn word for it, absent a sworn certification of itemized costs. A demand for payment made by Travelers, therefore, must be <u>certified</u> to be legally enforceable. Indeed, the importance and utility of the certification requirement is illustrated by the facts of this very case: not only did Triton <u>pay</u> Travelers upon receipt of the required certification, but the certification process immediately elicited a productive dialogue regarding the exact amount in dispute (putting aside the larger issue of whether <u>any</u> amount was due).[8]

In this context, we point out that Travelers (by its predecessor, Reliance) drafted the GAI, and thus any ambiguity about what constitutes a proper "demand" (triggering accrual of interest) under the GAI must be construed against Travelers. <u>See, e.g., David M. Somers & Assocs. v. Busch</u>, 283 Conn. 396, 405 n.10 (2007). Moreover, it makes no sense that interest would begin running on a putative claim for payment <u>before</u> the claim ripens into a legal obligation by the obligee's fulfillment of a contractual condition precedent to payment.

Connecticut statutory law governing the award of prejudgment interest compels the same result. <u>See</u> Conn. Gen. Stat. § 37-3a (permitting award of interest "as damages for the detention of money after it becomes payable"). It is well-established that a fundamental prerequisite to any award of interest under Conn. Gen. Stat. § 37-3a is a finding that the defendant's conduct

---

[8] <u>See</u> above pp. 5-6; Boyd Aff. at Exs. B-G (correspondence between Travelers' Sherrie Monteiro and Triton's David Boyd).

constituted a "wrongful detention of money." See, e.g., State v. Lex Associates, 248 Conn. 612, 628 (1999) ("a necessary predicate for such an award [of interest under Conn. Gen. Stat. § 37-3a] is, however, a determination that the party against whom interest is to be awarded 'has wrongfully detained money due the other party'") (quoting Blakeslee Arpaia Chapman, Inc. v. IE Constructors, Inc., 239 Conn. 708, 735 (1997)). "Where the claim rests on a breach of contract, statutory interest accrues from the date the contract was breached." Patron v. Konover, 35 Conn. App. 504, 517 (1994). See also O'Hara v. State, 218 Conn. 628, 643-44 (1991) (upholding trial court's decision to deny prejudgment interest based on trial court's determination that "there was no evidence of bad faith or wrongdoing on the part of the defendant notwithstanding finding that defendant was in breach of contract).

In the present case, there was never a <u>wrongful</u> detention of money by Triton because – as determined by this Court's prior holding and Travelers' own admission – Travelers failed to provide the certification until August 14, 2007, and there was no contractual obligation to pay Travelers until that certification was delivered. See Konover v. Patron, supra, 35 Conn. App. at 517-18 (reversing award of prejudgment interest because contractual default not triggered until receipt of notice of default under terms of contract). Prejudgment interest is not permitted under Conn. Gen. Stat. § 37-3a, as a matter of law, under these circumstances.

### B.  Interest Should Not Be Awarded as an Equitable Matter

Even if the award of prejudgment interest were legally permissible here, it is axiomatic under Connecticut law that the decision to award interest is ultimately committed to the sound discretion of the trier based upon equitable factors: "A plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so. The fact that an award of such interest is

12

discretionary and subject to equitable considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful." Maloney v. PCRE, LLC, 68 Conn. App. 727, 756 (2002) (citing extensive case support). Thus, the defendant's contractual breach of a payment obligation does not in itself justify the award of interest. See, e.g., Ceci Bros., Inc. v. Five Twenty-One Corp., 81 Conn. App. 419, 427 (2004) (interest to be awarded "if, in the discretion of the trier of fact, equitable considerations deem it warranted").

In the present case, even if this Court were to find that defendants failed to pay Travelers after the monies became legally due and owing, the equities tip strongly against any award of interest based upon the following considerations:

1. To begin with, although Travelers tries to characterize the expenditures for which it demands indemnity as recoupment of "payments made in good faith to discharge its principal's obligation," Pl. Br. at 2, the truth is that the lion's share of the Demand has nothing whatsoever to do with Travelers' alleged "discharge" of Triton's obligations. Rather, the monies at issue were largely attorney's fees incurred by Travelers negotiating a Workout Agreement with Triton, negotiations that terminated when Travelers simply threw up its hands, declared an impasse, and ultimately refused to allow Triton to pursue its claims against the government. Triton MSJ Opp. Memo, dated 1/4/05, at ¶ 29 at p. 15 [Doc. 58]; id. at Ex. 86. The idea that Travelers incurred these attorneys' fees while "discharging a principal's obligations" is well-nigh preposterous.

2. Except for fees ($17,335.95) paid to Arvin Daum for consulting services, Travelers' claim against Triton is not based upon fulfilling a bonded obligation. Triton funded the entire cost of the remedial work. Triton performed the entirety of the remedial work. Travelers bond obligation to the Government, the bond obligee on the Abiquiu Dam project, was fully discharged by Triton. See Triton MSJ Opp. Memo, dated 1/4/05, at ¶ 31 at p. 16 [Doc. 58]; id. at

Boyd Aff.; id. at McCollum Aff.

3. This Court previously held that Travelers was not <u>legally</u> obligated to allow Triton to challenge the government's "termination for default" on appeal in its effort to obtain payment from the government for the costs Triton expended performing the rework. But the issue here is not whether Travelers had a formal legal right to forfeit Triton's appeal rights, which Triton had wished to pursue at no cost to Travelers. See Triton MSJ Opp. Memo, dated 1/4/05, at ¶ 95 at pp. 43-44 [Doc. 58]; id. at Ex. 39; id. at Boyd Aff. Rather, the issue is whether, <u>as a matter of equity</u>, Travelers should be paid interest on top of its monetary recovery despite the fact that Travelers refused Triton's request and turned its back on its principal. We respectfully submit that, on the facts of this case, Travelers' callous treatment of Triton should not be rewarded by an award of interest.

4. Finally, there is very compelling evidence that Travelers itself is responsible for losses substantially in excess of the "loss" for which it seeks indemnification in this lawsuit. We do not refer here to Travelers' failure to permit an appeal (see #3 above), but rather Travelers' failure to pursue payment of certain "extras" that were performed by Triton during the rework, and its failure to request payment from the government for allowable markups in Travelers' submissions to the government to the Abiquiu Dam remediation work.[9] See Triton MSJ Opp. Memo, dated 1/4/05, at ¶ 36 at p. 17 [Doc. 58]; id. at McCollum Aff.; id. at Boyd Aff.

To summarize the pertinent facts, Travelers neglected and omitted to include, despite Triton's repeated requests, the surety's own legitimate markups and costs on the extras, and

---

[9] The "extras" are costs incurred during the course of performing the rework on the Abiquiu Dam gates, when the government directed work to be performed which Triton believed, <u>and Travelers representatives agreed,</u> went beyond the scope of satisfying requirements contained in the original contract.

14

ultimately upon the Triton claim to the Government. Travelers, in other words, could have paid itself without ever having to pursue this lawsuit or incur the expense involved in doing so. These "extras" were forfeited by Travelers without cause or justification. An example was a situation that arose when the government decided to perform work of its own in the tunnels upstream from the emergency gates in order to take advantage of the bypass Triton had erected to facilitate the gate rework. This upstream activity necessitated cessation of Triton's own operations. Triton crews and equipment had to stand idle while the Corps' crews finished their non-contract work. Triton had to pay its crews even though they were not performing any productive work, and Triton equipment and overhead costs continued during this period. The result was delay and extra costs that was unrelated to the original contract scope, and had nothing to do with the gate leakage remediation effort. See Triton MSJ Opp. Memo, dated 1/4/05, at ¶¶ 41, 68 at pp. 19-20, 32 [Doc. 58]; id. at Exs. 37, 39; id. at Boyd Aff.

The procedure by which these extras were lost by Travelers is not difficult to trace. Triton duly prepared a proposal for extra compensation which requested payment for the delay, idle labor, and related costs. See Triton MSJ Opp. Memo, dated 1/4/05, at ¶¶ 34, 35 at p. 17 [Doc. 58]. This request for an "extra" was forwarded to Travelers so that it could be processed through Travelers to the Corps for payment. Triton MSJ Opp. Memo, dated 1/4/05, at ¶¶ 34-40 at pp. 17-19 (and exhibits/affidavits cited therein) [Doc. 58]. Before routing the Triton request to the Corps, Travelers applied a surety overhead markup of ten percent, and a surety profit markup of five percent. Id. at ¶ 34. These markups were in addition to the "completion contractor cost" that Triton had submitted for pass-through to the Corps. Id. But Corps representatives have no recollection that Travelers asked that Corps to take action on this submittal. Id. It is undisputed

that no payment ever was made to Triton. Id. at ¶¶ 34, 35.[10]

One great irony here – a painful one for Triton – is that these "extras" include the very administrative costs which comprise the amounts Travelers has sought to recover from Triton in the present lawsuit. Triton's counterclaim against Travelers is now gone, and along with it Triton's defenses against liability on the counterclaim. From the evidence before the Court, however, it is clear that Travelers needlessly incurred the "costs" at issue here. The costs Travelers incurred as Completing Surety during the rework could have been recouped from the Government as a contract obligation of the Government if it had continued to apply the ten percent and five percent markups on the extras, and then had taken simple steps to assure that the Government processed the "extras" for payment. There is no good cause for this Court to exercise any of its discretion favorably to Travelers.

In its ruling on Travelers' original summary judgment motion, the Court found it unnecessary to reach this issue because of the Court's dispositive determination, for purposes of the Triton counterclaim, that no duty of any kind was owed. In the present context, however, Travelers' conduct must be assessed as part of the equitable determination of whether it should be awarded interest. We respectfully submit that, on equitable grounds, Travelers is not entitled to any interest.

---

[10] Three other "extras" were submitted by Triton to Travelers over the course of the gate remediation work. (The corrosion, i.e., electrolysis issue; fish clog or the pass-through pipe; and removing and replacing the Belzona seal on the gates.) Travelers representatives have no recollection that these items were forwarded to the Corps for payment. Triton MSJ Opp. Memo, dated 1/4/05, at ¶ 35 at p. 17 [Doc. 58]. Corps representatives have no recollection that they ever were received, despite the fact that Triton pressed Travelers' representatives to have them acted upon. It is undisputed that Triton received no payment on any of them. Id.

## **CONCLUSION**

Based on the foregoing grounds, and those grounds previously raised by defendants in the last round of summary judgment submissions to this Court, defendants respectfully submit that the optimal, correct outcome here is that the Court's 2/9/07 Summary Judgment Ruling be vacated, defendants' counterclaims restored, and this matter set down for trial on the Complaint and Counterclaims. We acknowledge that such an outcome is unlikely. If this Court adheres to its prior summary judgment ruling, and thus enters summary judgment in favor of Travelers on its claim against defendants for indemnification, then defendants hereby request that this Court find as follows in its decision on the pending motion:

1. That Triton has now paid in full the amount owed to Travelers under its claim for indemnification, i.e., the sum of $362,997.50, and does not owe Travelers anything more;

2. That no prejudgment interest is awarded to Travelers.

Respectfully submitted,
DEFENDANTS

By: _____/s/_____
Steven D. Ecker, Esq. (ct03762)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street, Suite 910
Hartford, CT 06103
(860) 278-5555
(860) 249-0012 Fax
E-mail: ecker@cemlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on November 16, 2007, the foregoing Motion for Extension of Time was mailed, postage prepaid, to:

Bradford R. Carver, Esq.
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110

Eric H. Loeffler, Esq.
Hinshaw & Culberton LLP
One International Plaza
Fort Hill Sq., 3rd Floor
Boston, MA 02110

John J. O'Brien, Jr., Esq.
Law Offices of Peck & O'Brien
P.O. Box 290942
Wethersfield, CT 06129

_____
Steven D. Ecker